IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-CV-1571

CO$_2$ COMMITTEE, INC., a Colorado nonprofit corporation,

     Plaintiff,

v.

MONTEZUMA COUNTY, MONTEZUMA COUNTY BOARD
OF COUNTY COMMISSIONERS, MONTEZUMA COUNTY
BOARD OF EQUALIZATION, MONTEZUMA COUNTY
ASSESSOR, and MONTEZUMA COUNTY TREASURER

     Defendants.

---

## COMPLAINT

---

The defendants (collectively hereafter "Montezuma County") have denied due process to the plaintiff acting on behalf of Royalty, Overriding Royalty and Small Share Working Interest Owners (collectively "members") in the McElmo Dome Field, Dolores and Montezuma Counties, State of Colorado. Montezuma County has denied plaintiff and its members due process of law by not giving them notice of a retroactive assessment which directly affected them and resulted in assessment of tax against them that is not permitted by law. The plaintiff, acting individually and on behalf of its members, hereby asserts its claim against Montezuma County and the other defendants (sometimes "the Montezuma County defendants") for violation of the Civil Rights Act, for damages and for such injunctive relief as may be approved by the Court.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343.

## PARTIES

The plaintiff $CO_2$ Committee, Inc. (hereafter the "Committee") is authorized to act on behalf of its members according to its Articles of Incorporation approved by the United States District Court for the District of Colorado on May 6, 2002. Its members include every owner of an interest in the McElmo Dome Unit except as set forth in the Memorandum of Standing attached hereto as Exhibit A and incorporated herein by reference. The Committee's members include non-operating working interest owners having some portion of an 11.224% interest in the Unit with the balance of interests applicable to royalty and overriding royalty interest owners.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

1. C.R.S. §39-7-101 provides for the assessment of property taxes applicable to every person owning any oil or gas leasehold or lands within the state of Colorado whether a single lease or as a unit. Returns are to be filed no later than April 15th of each year. The taxes are assessed based upon yearly production times 87.5% times "selling price at the wellhead". Such selling price is determined after deducting transportation costs. Kinder Morgan $CO_2$ Co., LP ("Kinder Morgan"), as the operator of the Unit, is obligated to file a statement for the Unit showing the location, address of the fractional interest of the operator, and the quantity of gas used during the prior year. A declaration made under perjury requires the operator to state "no representations are made as to the accuracy of the value of any portion of the production from subject property that is taken in-kind *by any owner other than the undersigned*".

2.      Non-operating interest owners are authorized to submit to the operator by March 15th a report of their actual net taxable revenues received at the wellhead, failing which the operator shall use the selling price at the wellhead received by the operator.  C.R.S. §39-7-101(1.5).  The Committee's members have relied on the latter procedure in the past because Kinder Morgan reported the net taxable revenue after 100% of their transportation costs.  The assessor's wrongful retroactive assessment of the Unit, as applied to Kinder Morgan, has changed this.

3.      C.R.S. §39-5-121(1.5), the personal property tax procedure required, provides, *inter alia*, that no later than June 15th of each year the assessor shall mail to each person who owns taxable personal property a notice setting forth the valuation of the personal property.  The notice states that the taxpayer has the right to protest any adjustment of valuation.  To preserve the taxpayer's right to protest, the taxpayer must notify the assessor by mail or in person of his objections and protest no later than June 30, upon failure of which the notice to protest is lost.  The procedure regarding notices of valuation and appeals of valuation is to follow the schedule for personal property.  C.R.S. §39-7-102.5.  The assessor has never mailed such a notice to the Committee or its members with respect to any retroactive adjustment beginning with tax year 2007.

4.      C.R.S. §39-5-121(1.5)(b) provides, in the case of taxable personal property on oil and gas leaseholds for which the operator has filed a statement under C.R.S. §39-7-101(1.5), that the assessor shall send the notice of valuation only to the operator.  Upon request of the county treasurer, the operator shall submit to the treasurer a written statement containing the name and

address of each person who has an ownership interest in the property.  The operator is under no obligation to give notice to owners of non-operating interests.  The foregoing procedures deny to the non-operating owners any notice or process with respect to the activities of the assessor.

5.      In 2009, the assessor issued a retroactive tax assessment on McElmo Dome leaseholds for the year 2008 assessing over $2 million in property taxes against Kinder Morgan. The amount of taxes assessed against the Committee members is unknown but is estimated to be in excess of $500,000 per year.

6.      Retroactive assessments authorized by 3 ARL §6.52, being guidelines authorized by C.R.S. §39-2-109(1)(k), allow the assessor to change the valuation of oil and gas leaseholds by issuing a special notice of valuation pursuant to 3 ARL §6.5-56 and to issue a tax bill to cover the omitted taxes as permitted by 3 ARL §6.52 - 6.57.  The assessor's right to review and change valuations is conditioned on "a letter to the taxpayers."  The assessor delivered no notice or letter of its retroactive assessment to the Committee or its members.  Further, there is no provision in the law or regulations that allows the assessor in retroactive assessments to deal solely with the operator.  None of the Committee's non-operating owner members received notice of the injustice the assessor has imposed upon them.  C.R.S. §39-5-121(1.5)(b) does not apply to retroactive assessments and is no refuge for the assessor.

7.      None of the provisions in the statutes or ALR permit the assessor to conduct a retroactive valuation without notice to all taxpayers.  Such notice was not provided.

-4-

8.      The major effect of the retroactive assessment is to substantially reduce the transportation costs applicable to the operator because the operator was found to be a person related to Cortez Pipeline Company whose pipeline is the means of transportation of $CO_2$ from the Unit to the marketplace.  Both the assessor and the treasurer treated all owners of non-operating interests as related parties in a manner to increase their valuation, even though they knew that such owners of non-operating interests had no interest in the Cortez Pipeline Company and were not related parties.  The assessor did this by wrongfully *assessing the Unit* rather than Kinder Morgan as a single taxpayer against whom its process was asserted.

9.      In April 2008, Kinder Morgan, 44% owner and operator of the Unit, submitted six operator statements, one for each tax district, detailing its production in Montezuma County for 2007.  The operator statements for 2007 showed a decrease in valuation of carbon dioxide from the previous tax year.  The Montezuma County assessor audited the statements and determined that Kinder Morgan had underreported the selling price of oil and gas produced because it erroneously applied the unrelated third-party method of calculating the transportation deduction rather than the related-party method.

10.      Pursuant to C.R.S. §39-7-101(1.5), Kinder Morgan, as operator, furnished to the assessor information with respect to the Committee's members who did not individually furnish the assessor his information.  The information furnished showed for the selling price, the selling price received by the operator (Kinder Morgan).

11.     The assessor illegally treated the Committee's members the same as Kinder Morgan and refused to let them deduct all of their transportation costs even though they were unrelated parties with respect to Cortez Pipeline Company.

12.     The assessor found that, as a result of applying the incorrect transportation deduction, Kinder Morgan underpaid its taxes in 2008 for year 2007.  Specifically, the audit resulted in an increased assessed valuation of $56,745,120 which increased Kinder Morgan's property taxes by $2,028,865.  The assessor's increase in taxes was based on a difference in the determination of the allowable transportation deduction.

13.     The Committee is uncertain about whether the retroactive assessment began with the 2007 tax year or the 2008 tax year but is nonetheless seeking justice with respect to the first tax year as to which a retroactive assessment occurred which denied the Committee's members the right to deduct all of their transportation costs.

14.     Kinder Morgan paid the tax bill and then, in 2011, filed a petition with the Board of County Commissioners for abatement or refund.  The Board of County Commissioners denied Kinder Morgan's petition.

15.     Kinder Morgan then appealed to the Board of Assessment Appeals ("BAA").  The BAA upheld the Board of County Commissioners' denial of the Petition for Abatement or Refund, reasoning that the assessor had the statutory authority to retroactively assess taxes under the auditing guidelines established pursuant to §39-2-109(1)(k), C.R.S., 2014, which provides that the property tax administrator ("PTA") is authorized to "prepare and publish guidelines

concerning the audit and compliance review of oil and gas leasehold properties for property tax purposes".

16.    The BAA found that retroactive assessments were appropriate as argued by Montezuma County and held:

> The Board finds that Kinder Morgan and the Cortez Pipeline Company were related parties.  As of December 31, 2007, Petitioner owned 50% of the Cortez Pipeline Company, having purchased it from Shell.  Financial statements are supportive.  Per the ARL, a transportation deduction is not allowed.  Petitioner presented insufficient probative evidence and testimony to prove that the tax year 2008 valuation of the subject property was incorrect.

17.    Kinder Morgan appealed to the Colorado Court of Appeals which filed its decision on June 4, 2015.  The Court of Appeals agreed, and affirmed the decision of the BAA that Montezuma County had the right to make retroactive assessments when value was omitted from scheduled property, found that Kinder Morgan underpaid its taxes for the tax year 2007, and confirmed the assessor's adjustments to the transportation allowance because of the related party rules.

18.    The Colorado Court of Appeals based its decision on a 1990 amendment to C.R.S. §39-10-107(1) which states:

> [Treasurer is obligated to distribute collective revenues monthly]...except that *any prior years' taxes collected* during any given year on oil and gas leaseholds and lands *which had previously been omitted from the assessment roll due to underreporting of the selling price or the quantity of oil and gas sold therefrom* shall be placed in escrow by the treasurer to be apportioned, credited, and distributed during January of the subsequent year.

19.    Kinder Morgan timely appealed the decision of the Court of Appeals to the Colorado Supreme Court (by petition for writ of certiorari).  On June 19, 2017, the Supreme

Court affirmed the judgment of the Court of Appeals. The opinion, *Kinder Morgan CO$_2$ Co., L.P. v. Montezuma County Board of Commissioners*, 396 P.3d 657 (Colo. 2017), is summarized as follows:

> (a)     "An operator's netback calculation depends on whether the operator contracts with a related or an unrelated party to perform these gathering, processing, and transportation services. If the operator enters into bona fide, arm's-length transaction with an unrelated party to perform these services, then the operator may deduct the full amount paid for these services from its final, downstream sales price in its netback calculation." *Id.* at 661.

> (b)     "As the operator, Kinder Morgan also files annual property tax statements for all of the leaseholds." *Id.* at 662.

> (c)     "The Cortez Pipeline – through which the CO$_2$ is shipped – is owned by Cortez Pipeline Company and operated by Kinder Morgan. Cortez Pipeline Company, in turn, is a partnership. At the time of the disputed tax assessment, Kinder Morgan owned a 50% interest in Cortez Pipeline Company. The remaining interest in the partnership was owned by Mobil Cortez Pipeline Company (37%) and Cortez Vickers Pipeline Company (13%). The Cortez Pipeline Company charges the same, fixed tariff to any entity that ships CO$_2$ through the pipeline."

> (d)     "When Kinder Morgan submitted its annual property tax statement for the 2008 tax year, it reported a wellhead selling price of 52¢ per MCF. Kinder Morgan calculated that wellhead selling price using the unrelated-parties netback methodology, under which Kinder Morgan deducted (among other costs) the full twenty-two cent transportation tariff it paid to Cortez Pipeline Company. Based on Kinder Morgan's annual statement, the assessor valued the Montezuma County leaseholds at approximately $157.5 million and assessed property taxes accordingly." *Id.* at 662.

> (e)     "Following an audit of Kinder Morgan's property taxes for the 2008 tax year, the assessor increased its valuation of the leaseholds by $57 million, largely based on the auditor's discovery of Kinder Morgan's 50% partnership interest in Cortez Pipeline Company. The auditor concluded that Kinder Morgan and Cortez Pipeline Company were "related parties", and that under the related-parties netback methodology, Kinder Morgan could deduct only a portion of the 22-cent transportation tariff when calculating its wellhead selling price. Under the auditor's revised valuation, Kinder Morgan tax liability increased by over $2 million."

> (f)     "Based on this audit, the assessor issued Special Notices of Valuation to Kinder Morgan, assessing the additional $2 million in proper taxes in light of the revised valuation. Kinder Morgan paid the taxes under protest and later filed petitions for abatement, seeking refunds of the retroactively increased taxes."

(g)    "Based on Kinder Morgan's underreporting, the assessor undervalued the leaseholds by approximately $57 million, causing Kinder Morgan to be undertaxed by more than $2 million.  We hold that, under these circumstances, the statutory scheme governing property taxation of oil and gas leaseholds and lands authorized the assessor to issue a corrective tax assessment in order to recover the amount by which Kinder Morgan had previously been undertaxed."  *Id.* at 667.

20.    Kinder Morgan was the petitioner for the BAA, was the appellant before the Colorado Court of Appeals and was petitioner before the Colorado Supreme Court.  None of these proceedings reflected any party other than Kinder Morgan.

21.    On November 20, 2017, Kinder Morgan delivered a memorandum to the Committee's members in the McElmo Dome Unit explaining the foregoing litigation and included the following:

Neither the Board nor any court has held that any interest owner in the Unit, other than Kinder Morgan, is a "related party" with Cortez Pipeline Company.  However, the Assessor's retroactive assessments reduced the transportation deduction (and thereby increased the value and the resulting taxes) for the entire Unit, including the portion of the Unit for which interest owners other than Kinder Morgan are liable for property taxes.  Kinder Morgan believes there is a strong argument that the reduction in the transportation deduction should not apply to the valuation of the portion of the Unit for which interest owners other than Kinder Morgan are liable for property taxes.  However, this argument needs to be presented to the Board by the affected interested owners, not by Kinder Morgan....Kinder Morgan recommends that any interest owner wishing to intervene in the appeals immediately retain legal counsel to advise the interest owner with respect to such intervention.

The foregoing memorandum was the first notice the Committee and its members received with respect to the retroactive assessment and payment of extra taxes.

22.    Upon receipt of the foregoing memorandum, the Committee wrote a letter dated November 28, 2017 to the Assistant Solicitor General, Robert H. Dodd, requesting that the Colorado Property Tax Administrator (1) issue a ruling that its claims and those of Montezuma

County do not apply to property taxes paid by Kinder Morgan on behalf of interest owners who are not related to Cortez Pipeline Company and (2) further order Montezuma County to take no action to recover property taxes already paid by unrelated parties. The request was denied. The assistant solicitor general replied that there was nothing he could presently do because the tax administrator had taken a contrary position in his answer brief filed with the Supreme Court. The pertinent language in such brief is as follows:

> Kinder Morgan finally argues that, even if the related party deduction could be properly applied as to Kinder Morgan, it cannot be properly applied to the other interest owners that are *not* related parties. This argument should be rejected because it is contrary to statute and is also unworkable. First, Section 39-7-101, C.R.S., requires an operator to file the annual statement for all interests in the Unit. Kinder Morgan's argument would require a separate leasehold valuation for each working interest owner based on their individual related or unrelated party status and, if unrelated, their individual expense contracts. This would defeat the purpose of requiring a single filing by the operator under Section 39-7-101. It would also be unworkable. Section 39-7-101 requires the operator to file a statement for the Unit. If each interest owner is to be treated separately, the operator would need to file a statement for each working interest owner. This could require dozens, if not hundreds, of statements for each Unit. The administrative burden on both taxpayers and assessors would be tremendous.

However, the Supreme Court, on certiorari, did not address this issue. Moreover, the argument as above presented is without any merit.

23.     The Committee requested further relief by an e-mail to Mark Rodriguez, attorney for Kinder Morgan, dated December 4, 2017. The Committee was referred by Kinder Morgan to its attorney, Alan Poe, Esq.

24.     Mr. Poe, in his letter to the Committee's counsel dated January 4, 2018, states, in part:

Montezuma County issued retroactive assessments against the Unit for tax years 2008, 2009, and 2010.  Kinder Morgan was required to pay those assessments, and has done so and made adjustments for the additional property taxes in prior billings to working interest owners.

\*\*\*

On November 30, 2017, Montezuma County issued retroactive assessments against the Unit for tax year 2011.  Kinder Morgan was required to pay those assessments, and has done so.  Adjustments for the additional property taxes resulting from the retroactive assessments for tax year 2011 are included in the December billings to working interest owners.

No retroactive assessments for tax years subsequent to 2011 have been issued, but Kinder Morgan anticipates that such retroactive assessments will be issued.  Kinder Morgan will advise interest owners of the issuance of any such retroactive assessments.

\*\*\*

As noted in response to Request 3, above, Kinder Morgan was required to pay, and has paid, the retroactive assessments for tax years 2008 through 2011.

\*\*\*

Kinder Morgan will continue to bill each or deduct from its payments to each Working Interest Owner, that owner's share of property taxes levied against the Unit in accordance with the provisions of the Unit Operating Agreement.

25.     On January 23, 2018, pursuant to C.R.S. §§39-5-122 to 217, the Committee filed an objection with the assessor complaining that she had wrongfully determined that the Committee members had underreported their valuation beginning with the 2008 tax year for ad valorem tax purposes and, in furtherance of its expectation provided for in C.R.S. §39-1-101.5, believed it would be accorded the respect and courtesy deserving in making the objection.  On March 30, 2018, the Committee wrote another letter to the assessor complaining that the Committee had not received a response to its January 23, 2018 letter.

26.     On April 12, 2018, the Committee received a letter from Montezuma County's attorney.  The letter claimed Montezuma County was unable to establish that Committee members were "unrelated" to Cortez Pipeline, that a different ad valorem tax methodology should not be applied to the Committee members in place of the "related party" methodology approved, and that separate special notices of valuation have never been provided to the Committee's members and were not required.

27.     The Committee replied by its attorney's letter dated April 29, 2018 noting the errors in Montezuma County's attorney's April 12, 2018 letter.

28.     On May 11, 2018, the Committee filed a Petition for Appeal to County Board of Equalization Under C.R.S. §39-8-106 and Petition for Abatement Under C.R.S. §39-1-113 as follows:

(a)     ***Petition for Appeal.***  $CO_2$ Committee, Inc. ("Committee"), on behalf of its members, appeal all findings, rulings and denial of its January 23, 2018 objection based on the County's imposition of excessive, illegal and unconstitutional taxes on such members.  The law requires the County Board of Equalization to receive and hear petitions from any person whose objections or protests have been refused or denied by the assessor.  This has occurred by action of the Board of County Commissioners in the assessor's stead.  The Committee requested a hearing before the Board of County Commissioners and the County Board of Equalization regarding its objections and protested all taxes wrongfully collected from them on the grounds set forth below.  The requested hearing was ignored.

-12-

(b)    *Petition for Abatement.*  The Committee also petitioned for abatement of taxes wrongfully levied and collected by the County and to have such excess taxes returned to the Committee's members as hereafter provided.  The Committee requested a hearing before the Board of County Commissioners and the County Board of Equalization regarding its petition for abatement to recover for Committee members of all taxes wrongfully collected from them on the grounds set forth below.  The requested hearing was ignored.

29.    On May 30, 2018, the Committee received a response to its Petition for Appeal to County Board of Equalization under C.R.S. §39-8-106 and Petition for Abatement Under C.R.S. §39-1-113.  Montezuma County's assessor's response was:

> The Montezuma County Assessor's office has not sent Notices of Value to your client, $CO_2$ Committee, Inc.  As your client is not identified as a Montezuma County taxpayer, we are not able to provide a hearing at the Board of Equalization. Thank you.

By letter dated June 8, 2018, the Committee responded without avail.

30.    The controversy initiated by the assessor's retroactive assessment involved Kinder Morgan only and no other owner of the McElmo Dome Unit.  No notice was ever given to any of the members of the Committee consisting of practically all Small Share Working Interest Owners, Royalty Owners, and Overriding Royalty Owners.

31.    All legal decisions from the BAA to the Colorado Supreme Court observed only that Kinder Morgan was a "related party".  It specified who the owners of the McElmo Dome

Unit are who were related to Cortez Pipeline Company but it did not enter a judgment against them or any of the other owners.

32.    If Kinder Morgan represented the Committee's members, it would have been required to submit a letter of agency required by 2 ARL §5.2.  That section states that "the Division recommends that assessors require letters of agency from persons who are not the owner of record but are filing a protest on behalf of the property owner" and that an authorized agent may be disallowed for lack of standing "if not accompanied by a letter of agency".  The Committee submitted its letter of agency to the assessor by its counsel's letter dated January 23, 2018 which was supported by an explanation of the agency.

33.    Montezuma County's right to retroactively assess the correct values is conditioned on its giving notice to the affected taxpayers.  Montezuma County gave no notice to the affected taxpayers, being the members of the Committee, that they were being subject to a retroactive assessment evaluation.

34.    Montezuma County knew that its retroactive assessment action was asserted against Kinder Morgan and yet, at the conclusion thereof, it assessed the Unit – not Kinder Morgan – even though all the litigation resulted in judgments against Kinder Morgan.

35.    The assessor has willfully and knowingly valued the taxable property of the Committee's members including the non-operating owners in Montezuma County contrary to the manner prescribed by law and is subject to the penalties provided therefor.  C.R.S. §39-5-126.

-14-

36.     Pursuant to C.R.S. §39-10-106(2), the Unit operator is obligated to pay taxes on behalf of royalty owners.  The Committee has no information on whether the reduction in valuation suffered by the working interest owners resulted in reduction in royalty and overriding owner payments to members of the Committee.

37.     The Committee is entitled to abatement of illegally paid taxes based upon the procedure provided for in C.R.S. §39-10-113 and other law.  As a result of the assessor's illegal retroactive assessments as applied to non-operating owners, the taxes on them have been levied erroneously and illegally because the assessor has treated them as related to Cortez Pipeline Company and denied to them the transportation costs to which they are entitled.  The Board of County Commissioners has the authority to refund the amounts paid based upon such retroactive assessments for 2007, 2008, 2009, 2010 and 2011.  The Court should order the assessor to recalculate the taxes inappropriately levied against the Committee's members, including interest, and rebate such amount to Kinder Morgan with instructions to distribute such amounts to the Committee's members by credits on their accounts.  The two-year abatement rule does not apply to the Committee and is unconstitutional as applied.

### FIRST CLAIM
#### (Civil Rights Violation under 42 U.S.C. §1983 Against Defendants)

38.     The rights, privileges or immunities of the Committee and its members secured by the Constitution include the right to notice and due process with respect to the actions of Montezuma County defendants to retroactively assess and take property from the Committee's members.

39. Montezuma County defendants had a duty under 42 U.S.C. §1983 not to deprive the Committee's members of their rights, privileges or immunities.

40. Montezuma County behaved in a way that deprived Committee members of their rights, privileges or immunities secured by the Constitution and laws and denied them their constitutional right to due process by refusing to honor their timely objections and petition for abatement and reimbursement of illegally collected taxes.

41. The relief available to the Committee's members under the law includes (1) attorney fees, (2) damages, (3) declaratory relief that Montezuma County violated the Fourteenth Amendment of the Constitution, and (4) a permanent injunction enjoining Montezuma County from ever again retroactively assessing Committee members without prior notice, hearing and other due process rights.

**SECOND CLAIM**
**(For Injunction)**

42. The Committee is entitled to a permanent injunction enjoining Montezuma County as requested in paragraph 43.

43. The Court should enjoin Montezuma County to obey the following orders:

(a) No retroactive assessment based on transportation deductions shall be made against the Committee's members for 2012-2017 tax years and subsequent years.

(b) All taxes imposed on the Committee's members prior to 2018 plus interest (being for 2007, 2008, 2009, 2010 and 2011), based on a reduction in transportation costs

as though such members were related parties, shall be calculated and returned to Kinder Morgan for distribution to such members by credits on their accounts.

(c)    No future retroactive assessments shall be made against the Committee's members without actual notice delivered to each of them.

(d)    Kinder Morgan's statutory statements beginning in 2018 and thereafter shall not be honored to the extent the net selling price for the Committee's members is based on less than 100% of the tariff paid by them.

(e)    All illegal taxes, if any, paid on behalf of royalty and overriding interest owners applicable to the leases owned by Committee members shall be calculated and returned to Kinder Morgan for distribution to such members by credits on their accounts.

(f)    The treasurer shall be ordered pursuant to C.R.S. §39-10-114 to report the over taxation of non-operating owners and related royalty and overriding royalty interest owners, if applicable, including interest, in order that excess taxes paid by them can be abated and returned.

(g)    The assessor shall be ordered not to ever again treat the Committee members as related parties absent credible evidence to the contrary.

44.    The defendants named herein have violated the statutory and constitutional rights of Committee members and taken money from them illegally without due process and without just compensation.  Their constitutional rights have been violated and any statute or regulation on which the defendants have relied are unconstitutional as applied to the Committee's members.

-17-

These rights are redressable by law if not corrected administratively. The Committee has exhausted its administrative remedies.

**WHEREFORE,** the Committee and its members pray for judgment as follows:

1. On their First Claim for relief, for declaratory relief that the Montezuma County defendants violated the Fifth Amendment and the Fourteenth Amendment of the Constitution, for a permanent injunction enjoining Montezuma County from ever again retroactively assessing Committee members without prior notice, hearing and other due process rights, and for such damages and attorney's fees under 42 U.S.C. §1988(b) as may be established including return of all taxes paid in excess of legal requirements plus interest.

2. On their Second Claim for relief, for an injunction against Montezuma County as requested in paragraph 43 of this Complaint.

3. For such other and additional relief as to the Court seems just.

**SIGNED** this 1st day October, 2018.

COGSWELL LAW OFFICES

/s/  John M. Cogswell
John M. Cogswell, #2898
413 East Main Street, Unit 130
PO Box 1430
Buena Vista, CO   81211
Telephone:  (719) 395-4900
E-mail:  Suzanne.CogswellLaw@gmail.com

**PLAINTIFFS' ADDRESS:**
CO$_2$ Committee, Inc.
c/o Gary Mahaffey
6410 C.R. 24.35, #3
Cortez, CO   81321

-18-

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 1, 2018, I electronically filed the foregoing **COMPLAINT** with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing:

/s/  John M. Cogswell
John M. Cogswell

6779\23221\Montezuma\Complaint